CUMMINS & WHITE, LLP
Larry M. Arnold, P.C. (Bar No. 060459)
E-mail: larnold@cwlawyers.com
Margaret R. Miglietta (Bar No. 116026)
E-mail: mmiglietta@cwlawyers.com
2424 S.E. Bristol Street, Suite 300
Newport Beach, CA 92660-0764
Telephone: (949) 852-1800
Facsimile: (949) 852-8510
*Attorneys for Plaintiffs*
*ASPEN SPECIALTY INSURANCE COMPANY; NAVIGATORS SPECIALTY INSURANCE COMPANY; COLONY INSURANCE COMPANY and NATIONAL FIRE & MARINE INSURANCE COMPANY*

SOLTMAN, LEVITT & FLAHERTY & WATTLES, LLP
Steven Soltman, Esq. (Bar No. 108649)
ssoltman@slfesq.com
90 E. Thousand Oaks Blvd., Suite 300
Thousand Oaks, CA 91360
Telephone: (805) 497-7706
Facsimile: (805) 497-1147 Fax
*Attorneys for Plaintiff*
*LLOYD'S OF LONDON NOVAE 2007 SYNDICATE*

MORISON LAW, LLP
William C. Morison (Bar No. 99981)
E-mail: wcm@morison.law
3478 Buskirk, Suite 342
Pleasant Hill, CA 94523
Telephone: (925) 937-9990
Facsimile: (925) 937-3272
*Attorneys for Plaintiff*
*HALLMARK SPECIALTY INSURANCE COMPANY*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HALLMARK SPECIALTY INSURANCE COMPANY, LLOYD'S OF LONDON NOVAE 2007 SYNDICATE, ASPEN SPECIALTY INSURANCE COMPANY; NAVIGATORS SPECIALTY INSURANCE COMPANY; COLONY INSURANCE COMPANY; NATIONAL FIRE & MARINE INSURANCE COMPANY,<br><br>Plaintiffs, | CASE NO.:<br><br>**COMPLAINT FOR DECLARATORY JUDGMENT** |

vs.

BENNETT REAL ESTATE OWNERS ASSOCIATION, a California corporation; LCG BELGRAVE LLC, a Delaware limited liability company.

Defendants.

## THE PARTIES

1. Plaintiff HALLMARK SPECIALTY INSURANCE COMPANY ("Hallmark") is an Oklahoma corporation having a principal place of business in Dallas, Texas.

2. Plaintiff LLOYD'S OF LONDON NOVAE 2007 SYNDICATE ("Lloyd's") is foreign insurance syndicate licensed in London and having a principal place of business in London, England.

3. Plaintiff ASPEN SPECIALTY INSURANCE COMPANY ("Aspen") is a North Dakota corporation having a principal place of business in Rocky Hill, Connecticut.

4. Plaintiff NAVIGATORS SPECIALTY INSURANCE COMPANY ("Navigators") is a New York corporation with its principal place of business in New York, New York.

5. Plaintiff COLONY INSURANCE COMPANY ("Colony") is a Virginia corporation with its principal place of business in Richmond, Virginia.

6. Plaintiff NATIONAL FIRE & MARINE INSURANCE COMPANY ("National") is a Nebraska corporation with its principal place of business in Omaha, Nebraska.

7. Plaintiffs Hallmark, Lloyd's, Aspen, Navigators, Colony and National are collectively referred to as "Underwriters."

8. Defendant BENNETT REAL ESTATE OWNERS ASSOCIATION ("Bennett") is a California corporation having its principal place of business in Santa Monica, California.

9. On information and belief Defendant LCG BELGRAVE LLC ("Belgrave") is a Delaware limited liability company with its members each residing in the County of Los Angeles, State of California.

10. Defendants Bennett and Belgrave are collectively referred to herein as "Defendants".

## JURISDICTION AND VENUE

11. This Court has jurisdiction over this matter pursuant to 28 U.S.C. Sec. 1332 (a)(1) because this is a diversity action between citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interests and costs.

12. Venue is appropriate in this District pursuant to 28. U.S.C. Sec. 1391 (a) (1) because Defendants have continuous and systematic business operations in this district, and the dispute involves insurance for damage to real and personal property located in this district.

## FACTUAL BACKGROUND

### The Insured Property

13. On information and belief, Defendant Belgrave is a member of Defendant Bennett, and Defendant Belgrave and Defendant Bennett have some shared ownership or interests.

14. On information and belief, Defendant Belgrave is, and at all times relevant herein, was the owner of real property located at 2075 Belgrave Ave., Huntington Park, CA 90255 (the Property").

15. On information and belief, the Property was a manufacturing and warehousing structure that was originally built circa 1957 with some modifications made in 2015. The Property consisted of a three-story steel building under a sawtooth roof constructed of fire resistive materials as were available in 1957.

**The Policy**

16. In or around the beginning of 2018, Defendant Bennett through its insurance broker sought insurance for its members and their respective properties.

17. Defendants' broker, RT Specialty, LLC provided a schedule of values to insurers, including Underwriters. Per that schedule of values, the Property had a Building Value of $1,434,940.

18. Underwriters along with other insurers at various coverage layers provided coverage under a broker manuscript policy produced by RT Specialty, which was in effect from May 10, 2018 to May 10, 2019, each insurer having individual policy numbers, all subject to provisions and conditions relevant to the Property and the outstanding claim as described below. Underwriters policy numbers include Hallmark Policy Nos. 73PRX18F2FE and 73PRX18F300, Lloyd's Policy Nos. 93PRX18F2FF and 93PRX18F301, Aspen Policy No. PXAGD2T18, Navigators Policy No. NY18HABOBJH6RNC, Colony Policy No. XP180148-0 and National Policy No. DF1000039 (collectively referred to as the "Policy"). A true and correct copy of the Policy to which all policies follow form, is attached hereto as Exhibit A.

19. Subject to its express terms, conditions, and limitations, the Policy generally provided coverage for the insured properties subject to each insured property's Building Value as provided by the Defendants and attached to the Policy as Appendix 'A' Location(s) and Deductible(s).

**The Fire Loss and the Claim Adjustment**

20. On February 13, 2019, the Property sustained a fire that rendered the Property a functional total loss ("the Fire Loss").

21. Through their retained independent adjuster, Engle Martin and Associates ("EMA"), the insurers including Underwriters investigated and evaluated the Fire Loss. As their investigation progressed, the insurers and Underwriters indemnified Defendants for the Fire Loss. As of the filing of this action, the insurers

including Underwriters have indemnified Defendants a total of $6,981,074.15, for the Property, representing the actual cash value of the Property.

22. Relying on their retained engineering and construction consultants, Underwriters have determined the Property has a full replacement cost value, inclusive of covered increased cost of construction due to ordinance or building codes and regulations of $7,681,640.79 leaving a balance owed for covered costs of re-construction, inclusive of increased costs of construction of approximately $700,556.63 due upon completion of the Property's re-construction.

23. Underwriters have also paid Belgrave $383,850.52 for loss of rents for two years, a time frame agreed upon by the parties' respective construction consultants, and a time frame sufficient for the rebuilding of the Property "with the exercise of due diligence and dispatch" and resuming business operations to pre-loss conditions pursuant to the Policy's period of recovery provisions.

**FIRST CLAIM FOR DECLARATORY RELIEF**

**(The Building Code Upgrade Claim)**

24. Underwriters incorporate herein by reference each and every allegation contained in the foregoing paragraphs, as if fully set forth below.

25. A dispute or controversy has arisen in that Underwriters contend, and Defendants dispute that, coverage for increased costs of reconstruction due to ordinance or law for the Property is limited to $286,988 based on the Property's Building Value of $1,434,940 and pursuant to the Policy's provision limiting such coverage to "20% of the Building Value, up to $7,500,000." (*See,* Exhibit A at Coverage C, as amended by Appendix B - Sublimits) and subject to the following terms and conditions:

> **12. Building Ordinance, Demolition and Increased Cost of Construction**
>
> In the event of physical loss or damage insured under this policy that causes the enforcement of any law or ordinance in force at the time of damage regulating the construction, repair or use of the property, the Insurer shall be liable for:

> . . .
>
> **Coverage C.** The increased cost of repair or reconstruction of the damaged and undamaged property on the same site and limited to the costs that would have been incurred in order to comply with the minimum requirements of such law or ordinance regulating the repair or reconstruction or use of the damaged property on the same site, *up to 10% of the building value up to $500,000 per* ***Occurrence*** *or as otherwise endorsed hereafter;** [*Per "Appendix B – Sublimits," this coverage is amended to provide 20% of the Building Value, up to $7,500,000]. However, the Insurer shall not be liable for any increased cost of construction loss unless the damaged property is actually rebuilt or replaced.

26. Additionally, Underwriters contend and Defendants dispute that coverage for increased costs of construction due to law or ordinance is only owed when the Property is actually rebuilt.

27. A declaration of the parties' rights and obligations is necessary and required in order to resolve the foregoing disputes. A declaratory judgment is both necessary and proper under the Declaratory Judgment Act, 28 U.S.C. § 2201, et seq., to determine the rights, obligations and liabilities that exist among and between the parties relative to: (a) the limit of coverage Underwriters are liable, or the most that Defendants may recover for increased costs of construction and (b) when such coverage is owed.

## SECOND CLAIM FOR DECLARATORY RELIEF

## (The Building Claim)

28. Underwriters incorporate herein by reference each and every allegation contained in the foregoing paragraphs, as if fully set forth below.

29. A further dispute or controversy has arisen in that Underwriters contend, and Defendants dispute that if Defendants do not rebuild the Property to the same height, floor area, size, style or comparable quality of the original property insured due to the enforcement of law or ordinance regulating, restricting or prohibiting repair or replacement of covered property, Underwriters' liability is limited to the costs of reconstruction of the Property as the Property existed before the loss, and subject to

actual reconstruction of the Property:

> It is understood and agreed that in the event **Real Property** or **Personal Property** is not repaired or replaced to the same height, floor area, size, style or comparable quality of the original property insured due to the enforcement of law or ordinance regulating, restricting or prohibiting repair or replacement of covered property, this policy will pay the full replacement cost without deduction for depreciation for the **Real Property** or **Personal Property** damaged or destroyed, up to the Limit of Liability contained within this policy, as if the property was replaced to the same height, floor area, size, style or comparable quality of the original property specifications insured.
>
> This policy will also pay **rental income** loss as if the original structure were repaired or replaced to original specifications, including number of units and/or square footage, for a period not to exceed 12 months subject to the terms and conditions of this policy.
>
> . . .
>
> **11. Valuation**
>
> At time of loss, the basis of adjustment shall be as follows:
>
> A. On buildings and structures, at the replacement cost new with materials of like kind and quality; if not replaced, then at the **actual cash value.**
>
> . . .
>
> **43. Definitions**
>
> The following terms whenever used in this policy shall mean:
>
> **A. Actual Cash Value**
>
> The cost to repair or replace the damaged property, minus depreciation of materials and applicable labor.
>
> . . .

30. Underwriters contend, and Defendants dispute the Actual Cash Value of the Property is $6,981,074.15;

31. Underwriters contend, and Defendants dispute the Replacement Cost Value of the Property pursuant to the provisions quoted in paragraph 25. B. above, namely replacement "new with materials of like kind and quality" is $7,394,652.79.

32. A declaration of the parties' rights and obligations is necessary and required in order to resolve the foregoing disputes. A declaratory judgment is both necessary and proper under the Declaratory Judgment Act, 28 U.S.C. § 2201, et seq., to determine the rights, obligations and liabilities that exist among and between the parties relative to (a) the actual cash value of the Property, (b) the replacement cost value of the Property, (c) the amounts due and owing under the Policy before reconstruction is completed (if any) and (d) the amounts due and owing under the Policy once Belgrave completes reconstruction of the Property.

**THIRD CLAIM FOR DECLARATORY RELIEF**

**(The Loss of Rents Claim)**

33. Underwriters incorporate herein by reference each and every allegation contained in the foregoing paragraphs, as if fully set forth below.

34. A further dispute or controversy has arisen in that Underwriters contend, and Defendants dispute that Underwriters have fully and adequately indemnified Belgrave for loss of rents due under the Policy based upon the time it should have taken to rebuild the Property with exercise of due diligence and dispatch, plus a maximum of an additional 30 days for Belgrave to resume operations at pre-loss conditions pursuant to the following Policy provisions:

**B. Rental Value/Rental Income**

Coverage is hereby provided for Rental Value/Rental Income

(1) Rental value loss sustained by the Insured resulting directly from the necessary untenantability caused by physical loss, damage, or destruction by any of the perils covered herein during the term of this policy to Real or Personal Property as described in Clause 8A, but not exceeding the reduction in rental value less charges and expenses which do not necessarily continue during the period of recovery.

(2) If the Insured is the lessor, for the purposes of this insurance, rental value is defined as the sum of:

    a. the total anticipated gross rental income from tenant occupancy of the described property as furnished and equipped by the Insured, and

    b. the amount of all charges which are the legal obligation of the tenant(s) and which would otherwise be obligations of the Insured, and

    c. the fair rental value of any portion of said property which is occupied by the Insured.

. . .

(4) Experience of the Business

    a. In determining the amount of rental value covered hereunder for the purpose of ascertaining the amount of loss sustained, due consideration shall be given to the rental experience before the date of damage or destruction and to the probable experience thereafter had no loss occurred.

    b. With respect to alterations, additions, and property while in the course of construction, erection, installation, or assembly, due consideration shall be given to the available rental experience of the business after completion of the construction, erection, installation or assembly.

. . .

B. Loss Provisions Applicable to Clauses 8.B Extra Expense, 8.C Rental Value / Rental Income, and 8.D Soft Costs.

**(1) Period of Recovery**

The length of time for which loss may be claimed is referred to as the period of recovery and:

a. shall commence with the date of such loss or damage and shall not be limited by the date of expiration of this policy;

b. shall not exceed such length of time as would be required with the exercise of due diligence and dispatch to repair, or replace the property that has been destroyed or damaged; and

c. such additional length of time to restore the Insured's business to the condition that would have existed had no loss occurred, commencing with the later of the following dates:

i. the date on which the liability of the Insurer for loss or damage would otherwise terminate; or

ii. the date on which repair, replacement or rebuilding of the property that has been damaged is actually completed and the Insured has resumed normal operations but in no event for more than thirty (30) consecutive days thereafter, or as otherwise endorsed hereafter, from said later commencement date.

35. A declaration of the parties' rights and obligations is necessary and required to resolve the foregoing loss of rent dispute. A declaratory judgment is both necessary and proper under the Declaratory Judgment Act, 28 U.S.C. § 2201, et seq., to determine the rights, obligations and liabilities that exist among and between the parties relative to the loss of rents claimed by Belgrave.

**WHEREFORE**, Underwriters demand judgment against Defendants as follows:

**FIRST CLAIM FOR DECLARATORY RELIEF-The Building Code Upgrade Claim:**

1. Adjudication that the Policy's coverage for Increased Costs of Construction due to ordinance or law for the Property is limited to $286,988 based on the Property's Building Value of $1,434,940 and pursuant to the Policy's provision limiting such coverage to "20% of the Building Value, up to $7,500,000";

2. Adjudication that if Defendants do not replace the Property, no coverage is owed for increased costs of construction or code upgrades;

**SECOND CLAIM FOR DECLARATORY RELIEF-The Building Claim**:

3. Adjudication that if Defendants do not replace the Property, coverage under the Policy is limited to the Property's actual cash value;

4. Adjudication of the actual cash value of the Property;

5. Adjudication of the replacement cost value of the Property;

**THIRD CLAIM FOR DECLARATORY RELIEF-The Loss of Rents Claim:**

6. Adjudication of the period of recovery;

7. Adjudication of the loss of rents to which Belgrave is entitled; and

**As to All Causes of Action**:

8. For such other legal and equitable relief that this court may award in the interest of justice.

Dated: August 9, 2021

CUMMINS & WHITE, LLP

By: ______________________
Larry M. Arnold, P.C.
Margaret R. Miglietta
Attorneys for Plaintiffs ASPEN SPECIALTY INSURANCE COMPANY; NAVIGATORS SPECIALTY INSURANCE COMPANY;COLONY INSURANCE COMPANY and NATIONAL FIRE & MARINE INSURANCE COMPANY

Dated: August 9, 2021

SOLTMAN, LEVITT & FLAHERTY

By: */s/ Steven Soltman*
Steven Soltman, Esq.
Attorneys for Plaintiff LLOYD'S OF LONDON NOVAE 2007 SYNDICATE

Dated: August 9, 2021

MORISON & PROUGH, LLP

By: */s/ William C. Morison*
William C. Morison
Attorneys for Plaintiff HALLMARK SPECIALTY INSURANCE COMPANY